KING & SPALDING LLP
Mark W. Wege
Eric M. English
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

KING & SPALDING LLP
Scott I. Davidson
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Proposed Bankruptcy Counsel for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION**

-------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| SPECTRAWATT, INC., | Case No. 11-37366-CGM |
| Debtor. | |

-------------------------------------------------------x

### AFFIDAVIT PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

Brad Walker hereby states as follows:

1. I am the Chief Restructuring Officer and Chief Executive Officer of SpectraWatt, Inc. (the "Debtor"), and I make this Affidavit pursuant to Rule 1007-2 of the Rules of this Court.

2. On August 19, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor is a developer and manufacturer of advanced crystalline silicon cells used in the generation of solar electricity (the "Business").  The Debtor was formed in June 2008 with certain intellectual property and other assets acquired from Intel Corporation, together with a $50 million capital contribution from certain investors.  Since that time, the Debtor has developed, manufactured and distributed silicon solar cells for use in solar modules.  The Debtor has also engaged in substantial research and development in the solar cell field.  The Debtor's goal was to improve upon current solar cell technology and enable solar-generated electricity to compete, on an unsubsidized basis, with conventional sources of electricity.

4.      In 2009, the Debtor relocated its corporate headquarters from Hillsboro, Oregon to Hopewell Junction, New York to take advantage of incentives provided by the New York State Energy Research and Development Authority and to access the region's large skilled workforce.  The Debtor leases facilities at IBM's Hudson Valley Research Park, 2070 Route 52, Bldg 334 Zip 23A, Hopewell Junction, New York 12533 (the "New York Facility"), where the Debtor constructed a state-of-the-art manufacturing facility seeking full-scale production capacity of over two hundred (200) megawatts of production per year.[1]  The Debtor began operating the New York Facility in January 2010 at an initial capacity of thirty (30) megawatts per year.

5.      Due to defects in vendor-supplied silicon wafers that were a key component of its products and certain defects in production equipment, the Debtor faced delays and the quality of the Debtor's finished products failed to meet purchaser specifications.[2]  As a result,

---

[1] Production of solar cells is measured in megawatts per year.  Two hundred (200) megawatts per year is equivalent to approximately fifty million (50,000,000) wafers.

[2] These defects will likely be the subject of future litigation or potential settlements of disputes the Debtor has with certain of its key suppliers and service providers.

the Debtor was forced to sell a large quantity of its finished products at reduced prices and, accordingly, the Debtor suffered from lost revenues. The Debtor's inability to produce finished products at the required specifications also led to customer defections. Ultimately, the Debtor was able to resolve some of these problems and/or replace certain of its suppliers, but the financial difficulties caused by these problems contributed to the Debtor's inability to obtain additional financing in late 2010 (which would have allowed the Debtor to continue production), or to obtain a strategic equity partner.

6. The defects in the Debtor's production equipment and silicon wafers severely impacted the Debtor's business at the crucial early stages of production when the Debtor could ill-afford such major setbacks. The Debtor, given the production issues caused by these problems and without access to additional financing, announced in late December 2010 that it would close its manufacturing facilities. By the end of March 2011, the Debtor had completed the shut-down of its manufacturing facilities and laid-off all of its workforce in New York and Oregon. The Debtor subsequently closed its remaining Oregon operations and has liquidated its physical assets in Oregon. Following the termination of its employees, the Debtor rehired six (6) of its previous employees, giving them additional responsibilities.[3] Although the Debtor has ceased its manufacturing activities, the Debtor continued over the last several months to fill orders for its completed product inventory, leaving virtually no remaining finished goods inventory as of the Petition Date.

7. As of the Petition Date, the Debtor had assets of approximately $33.9 million and liabilities of approximately $38.6 million. The Debtor's corporate headquarters are located at 2070 Route 52, Building 334, Hopewell Junction, New York.

---

[3] As of the Petition Date, the Debtor has five (5) employees.

8. The names and addresses of the Debtor's unsecured creditors are attached to the Debtor's Chapter 11 petition and hereto as <u>Exhibit A</u>. The list contains fewer than 20 creditors. The Debtor is still investigating which claims are contingent, unliquidated, disputed or partially secured.

9. The names and addresses of the holders of the Debtor's largest secured claims, and related contact information, are attached hereto as <u>Exhibit B</u>. These claims are secured by substantially all of the Debtor's assets. The Debtor is still investigating which secured claims are contingent, unliquidated, disputed, or partially secured.

10. The Debtor's assets consist of its manufacturing equipment and leasehold in New York, raw material inventory, finished product inventory, and intangible assets including patents, trademarks and other intellectual property. The Debtor's liabilities consist of secured convertible notes, alleged debts related to the purchase of certain capital equipment, and unsecured trade debt.

11. The debtor has no shares of stock, debentures or other securities which are publicly held.

12. There is no property of the debtor in the possession or custody of any public officer, receiver, trustee or assignee for the benefit of creditors, mortgagee pledgee or assignee or rents.

13. The Debtor leases the following premises from which the Debtor operates (or has operated) its business: approximately 142,663 rentable square feet of manufacturing and office space in Hopewell Junction, New York.

14. All of the Debtor's assets, along with its books and records, are located at its corporate headquarters in Hopewell Junction, New York. The Debtor will be rejecting a lease of

property in Oregon. The Debtor does not hold any assets outside of the territorial limits of the United States.

15. The debtor is not involved in any lawsuits now pending and has not been threatened with any action where a judgment against the Debtor or the seizure of its property may be imminent.

16. The remaining senior management of the Debtor consists of myself and Richard Haug, who is the Chief Operating Officer, President and Secretary. I was retained by the Debtor, effective January 17, 2011, to serve as its Chief Restructuring Officer. In March 2011, I also assumed the role of Chief Executive Officer of the Debtor. I have over twenty years of experience rebuilding and reorganizing companies in a variety of industries, including experience in developing asset sale strategies. Over the past ten years, I have served primarily as the chief restructuring officer, interim Chief Executive Officer or chief advisor for a number of companies in a wide variety of fields including manufacturing, energy, technology, software and internet development, healthcare, and others.

17. Richard Haug has substantial experience in the high technology manufacturing sector and specializes in taking new product concepts from the drawing board to full commercialization and production. In particular, Mr. Haug has experience in managing operations at early-stage growth firms, as well as established companies. At the Debtor, Mr. Haug has been integral in developing and implementing production at the Debtor's New York production facility.

18. It is respectfully submitted that the best interests of creditors and the Debtor would be served by allowing the Debtor to remain as the debtor-in-possession to protect the value of its assets and to take steps to effectuate a sale of most of its remaining assets. The

Debtor intends to promptly file a motion with this Court to approve such a sale, which the Debtor believes will achieve the best possible return for creditors. For all of the above reasons, the debtor desires to continue in possession of its assets and business.

19. The estimated amount of the weekly payroll to employees of the Debtor for the 30-day period following the Petition Date is $11,369.50 as the debtor has just five (5) current employees.

20. The amount paid and proposed to be paid for services for the 30-day period following the Petition Date to officers, stockholders and directors is zero, except for the ordinary monthly payroll to Richard Haug and payments to Brad Walker, both as detailed in the attached Budget.

21. The amount paid and proposed to be paid for services for the 30-day period following the Petition Date to financial consultants is zero, as the Debtor has not retained financial consultants.

22. The Debtor's estimated pro forma cash budget for the 30-day day period following the Petition Date is set forth as <u>Exhibit C</u> annexed hereto.

Dated: August 19, 2011

<u>/s/ Brad Walker</u>
Brad Walker
Chief Restructuring Officer and Chief Executive Officer