KING & SPALDING LLP
Mark W. Wege
Eric M. English
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

KING & SPALDING LLP
Scott I. Davidson
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Proposed Bankruptcy Counsel for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION**

-------------------------------------------------------x

In re:                                              Chapter 11

**SPECTRAWATT, INC.,**                              Case No. 11-37366-CGM

                        **Debtor.**

-------------------------------------------------------x

**DEBTOR'S APPLICATION UNDER 11 U.S.C. §§ 327 AND 328 TO EMPLOY BRAD
WALKER AS THE DEBTOR'S CHIEF RESTRUCTURING OFFICER AND CHIEF
EXECUTIVE OFFICER**

SpectraWatt, Inc., the above-captioned debtor-in-possession (the "Debtor"), hereby files this Application (the "Application") to Approve Retention of Brad Walker ("Walker") as the Debtor's Chief Restructuring Officer ("CRO") and Chief Executive Officer ("CEO") and approving the terms and conditions under which Walker will be retained and compensated.[1] In support of the Application, the Debtor respectfully represents as follows:

---

[1] The Debtor also seeks to retain Walker's associate, Daniel Warsowick, who will assist Walker in the discharge of his duties, as described in greater detail below.

**JURISDICTION**

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On August 18, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtor is a developer and manufacturer of advanced crystalline silicon cells used in the generation of solar electricity (the "Business"). The Debtor was formed in June 2008 with certain intellectual property and other assets acquired from Intel Corporation, together with a $50 million capital contribution from certain investors. Since that time, the Debtor has developed, manufactured and distributed silicon solar cells for use in solar modules. The Debtor has also engaged in substantial research and development in the solar cell field. The Debtor's goal was to improve upon current solar cell technology and enable solar-generated electricity to compete, on an unsubsidized basis, with conventional sources of electricity.

4. In 2009, the Debtor relocated its corporate headquarters from Hillsboro, Oregon to Hopewell Junction, New York to take advantage of incentives provided by the New York State Energy Research and Development Authority and to access the region's large skilled workforce. The Debtor leases facilities at IBM's Hudson Valley Research Park, 2070 Route 52, Bldg 334 Zip 23A, Hopewell Junction, New York 12533 (the "New York Facility"), where the Debtor constructed a state-of-the-art manufacturing facility seeking full-scale production

capacity of over two hundred (200) megawatts of production per year.[2] The Debtor began operating the New York Facility in January 2010 at an initial capacity of thirty (30) megawatts per year.

5. Due to defects in vendor-supplied silicon wafers that were a key component of its products and certain defects in production equipment, the Debtor faced delays and the quality of the Debtor's finished products failed to meet purchaser specifications.[3] As a result, the Debtor was forced to sell a large quantity of its finished products at reduced prices and, accordingly, the Debtor suffered from lost revenues. The Debtor's inability to produce finished products at the required specifications also led to customer defections. Ultimately, the Debtor was able to resolve some of these problems and/or replace certain of its suppliers, but the financial difficulties caused by these problems contributed to the Debtor's inability to obtain additional financing in late 2010 (which would have allowed the Debtor to continue production), or to obtain a strategic equity partner.

6. The defects in the Debtor's production equipment and silicon wafers severely impacted the Debtor's business at the crucial early stages of production when the Debtor could ill-afford such major setbacks. The Debtor, given the production issues caused by these problems and without access to additional financing, announced in late December 2010 that it would close its manufacturing facilities. By the end of March 2011, the Debtor had completed

---

[2] Production of solar cells is measured in megawatts per year. Two hundred (200) megawatts per year is equivalent to approximately fifty million (50,000,000) wafers.

[3] These defects will likely be the subject of future litigation or potential settlements of disputes the Debtor has with certain of its key suppliers and service providers.

the shut-down of its manufacturing facilities and laid-off all of its workforce in New York and Oregon. The Debtor subsequently closed its remaining Oregon operations and has liquidated its physical assets in Oregon. Following the termination of its employees, the Debtor rehired six (6) of its previous employees, giving them additional responsibilities.[4] Although the Debtor has ceased its manufacturing activities, the Debtor continued over the last several months to fill orders for its completed product inventory, leaving virtually no remaining finished goods inventory as of the Petition Date.

## RELIEF REQUESTED

7. By this Application, the Debtor respectfully requests entry of an order, pursuant to Bankruptcy Code sections 327(a) and 328, and Bankruptcy Rule 2014, (i) authorizing the Debtor to retain and employ Walker as CRO and CEO to the Debtor, (ii) approving the terms and conditions contained in that certain Agreement for Consulting Services, effective January 17, 2011, and the terms of all Work Authorizations executed by the parties pursuant thereto (collectively, the "Engagement Agreement"), under which Walker has been retained prepetition and will be retained postpetition and compensated at the expense of the Debtor's estate and (iii) granting related relief. In conjunction with retaining Walker as the CRO and CEO to the Debtor, the Debtor also seeks authority, pursuant to a Work Authorization that has been made part of the Engagement Agreement, to retain Daniel Warsowick ("Warsowick"), who has been employed by Walker to assist Walker in discharging his duties.[5] A copy of the Engagement Agreement is

---

[4] As of the Petition Date, the Debtor has five (5) employees.

[5] References herein to Walker shall also refer to Warsowick, where appropriate.

annexed hereto as <u>Exhibit B</u>.[6]

8. The Debtor requests that Walker not be required to file monthly fee statements (as contemplated by the Debtor's motion seeking approval of interim compensation procedures filed contemporaneously herewith) and shall only be required to file a final fee application with this Court to seek approval of Walker's Success Fee (defined below).

## BASIS FOR RELIEF REQUESTED

### A. Legal Standard to Employ Walker as CRO and CEO

9. Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code. Under section 328(a) of the Bankruptcy Code, a debtor in possession may employ professional persons under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

10. Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, its respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014(a).

---

[6] Any statements contained herein concerning the terms and conditions of the Engagement Agreement are qualified entirely by reference to the Engagement Agreement. In the event of a conflict between this Application and the Engagement Agreement, the Engagement Agreement shall control.

11. By this Application, the Debtor requests that the Court approve the employment and compensation arrangements described in the Engagement Agreement pursuant to sections 327(a) and 328 of the Bankruptcy Code. The employment arrangements contained in the Engagement Agreement are beneficial to the Debtor's estate and the compensation arrangements provide certainty and proper inducement for Walker to act expeditiously and prudently with respect to the matters for which he will be employed.

### B. The Debtor's Relationship with Walker

12. The Debtor engaged Walker effective January 17, 2011, to provide the Debtor with the financial advisory, restructuring and managerial services of a CRO. The Debtor chose Walker to act as the Debtor's CRO because Walker has substantial expertise and experience in the operation, sale, and restructuring of troubled companies, as described in more detail below. As of March 23, 2011, Walker has also been employed in the additional role of the Debtor's Chief Executive Officer. I have also been appointed as a member of the Debtor's board of directors. As a result, the Debtor believes that Walker is well qualified to perform these services and represent the Debtor's interests in this Chapter 11 case.

### C. Qualifications of Walker

13. Walker has over twenty years of experience rebuilding and reorganizing companies in a variety of industries, including experience in developing asset sale strategies. Over the past ten years, Walker has served primarily as the CRO, interim Chief Executive Officer or chief advisor for a number of companies in a wide variety of fields including manufacturing, energy, technology, software and internet development, healthcare, and others. Walker has substantial experience working with distressed companies in different capacities both in and out of bankruptcy.

14. Walker holds a business administration degree (*cum laude*) from Baylor University, with a minor in computer sciences.

    **D.    Disinterestedness of Walker**

15. To the best of the Debtor's knowledge, information and belief, and based entirely and in reliance upon the Affidavit of Brad Walker (the "<u>Walker Affidavit</u>"), attached as Exhibit A to this Application: (a) Walker is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtor, its creditors, and shareholders for the matters for which Walker is to be employed; and (b) Walker has no connection to the Debtor, its creditors, shareholders or related parties herein except as disclosed in the Walker Affidavit. Moreover, the retention and employment of Walker is necessary and in the best interests of the Debtor, its estate, creditors and equity interest holders.

16. Also to the best of the Debtor's knowledge, information and belief, and based entirely and in reliance upon the Walker Affidavit: (i) to the best of Walker's knowledge, information and belief, none of Walker's past or current engagements would or does appear to create an interest materially adverse to the interests of the Debtor, creditors, or equity security holders in this case and, as such, the Debtor believes that Walker is disinterested and holds no materially adverse interest as to the matters upon which he is to be retained; and (ii) to the extent Walker discovers any facts bearing on the matters described herein during the period of Walker's retention, it will supplement the information contained in the Walker Affidavit. The Walker Affidavit discloses prior engagements involving Goldman Sachs and its affiliates that are unrelated to the Debtor or this Chapter 11 case.

    **E.    Scope of Services to be Provided**

17. The parties have entered into the Engagement Agreement, which governs the relationship between Walker and the Debtor. The terms and conditions of the Engagement Agreement were negotiated, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Agreement, Walker will provide the Debtor with certain financial advisory and managerial services as the Debtor's CRO and CEO.

18. It is necessary that the Debtor employ Walker as its CRO and CEO. The Debtor believes that his services will not duplicate the services that other professionals will be providing the Debtor in this case. Specifically, Walker will carry out unique functions and will use reasonable efforts to coordinate with the Debtor and other professionals retained in this case to avoid the unnecessary duplication of services.

19. Warsowick will be employed as Walker's associate and will assist Walker with various financial matters arising in the administration of this case and, in particular, will assist in preparing schedules, statements, and monthly operating reports. It is also expected that Warsowick will prepare certain documents and schedules necessary to effectuate the Debtor's proposed sale transaction.

**F.     Compensation**

20. As set forth in the Engagement Agreement, the Debtor and Walker agreed to the following terms of compensation:

   a. <u>Walker Hourly Fee</u>: $250

   b. <u>Warsowick Hourly Fee</u>: $195

   c. <u>Bonuses</u>: (i) $25,000 bonus for successful sale of the Debtor's assets and/or of the Debtor, in a format approved by this Court, and (ii) $25,000 bonus for any positive recovery of proceeds for holders of the Debtor's pre-petition secured

        debt, after taking into account consideration amounts paid to Roth & Rau pursuant to its purchase-money security interest (collectively, the "<u>Success Fee</u>").

    d. <u>Retainer</u>: $35,000, to be held until completion of the engagement and then applied to any outstanding balances, if any.

    e. <u>Expenses</u>: Walker will be reimbursed for actual expenses directly relating to any work undertaken pursuant to the Engagement Agreement. Walker shall adhere to the Debtor's corporate travel guidelines.

    f. <u>Carve Out</u>: The Debtor agrees that Walker will participate fully on a pro-rata basis in any Court-approved "carve-out" of funds from cash collateral to be utilized for the payment of professional fees and expenses in this case.

21. The compensation structure described in the Engagement Agreement is reasonable and comparable to those generally charged by CROs of similar stature to Walker.

22. Pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the local rules, Walker will be reimbursed for fees and expenses periodically pursuant to the Engagement Agreement and will apply to the Court for final allowance of the Success Fee pursuant to section 328 of the Bankruptcy Code. Walker will not be required to submit monthly fee statements and will not be required to submit billing records.

## NOTICE

23. Notice of this Application has been given to: (i) the Office of the United States Trustee for this district and division; (ii) the Series A-1 Noteholder Agent, (iii) counsel for the Series A-1 Noteholder Agent; (iv) each of the secured lenders a party to the December 21, 2009 Loan and Security Agreement; (v) each of the Debtor's unsecured creditors; and (vi) all other parties on the master service list proposed by the Debtor for this case.

## NO PRIOR REQUEST

24. No prior request for the relief sought in this Application has been made to this or any other court in connection with this Chapter 11 case.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form annexed hereto as Exhibit C, (i) authorizing the Debtor to retain and employ Walker as Chief Restructuring Officer and Chief Executive Officer to the Debtor, (ii) approving the terms and conditions contained in the Engagement Agreement and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: August 19, 2011;

Houston, Texas

SpectraWatt, Inc.

By: _____
Brad Walker
Chief Restructuring Officer and Chief Executive Officer