EXHIBIT A

**[EXECUTION COPY]**

 # Heritage Global Partners
## Asset Advisory and Auction Services
### *A Legacy since 1937*

## EXCLUSIVE SALES AGENT AGREEMENT

This Exclusive Sales Agent Agreement ("Agreement") is made as of July 25, 2011 ("Effective Date")

BETWEEN:

> SpectraWatt Inc.
> 2070 Route 52, Bldg 334 Zip 23A
> Hopewell Junction, NY 12533
> Attention:      Brad Walker, CEO/CRO
>                 Richard J. Haug, President/COO
> Telephone:      (845) 440-2100
> Fax:            (845) 896-4925
>
> ("Seller"),

AND

> Heritage Global Partners, a California corporation
> Hacienda Del Mar
> 12625 High Bluff Drive Suite 211
> San Diego, CA 92130
> Attention:      Kirk Dove
> Telephone:      (858) 847-0650
> Fax:            (858) 847-0660
>
> Counsel RB Capital, LLC, a Delaware corporation
> 10618 Pico Blvd.
> Los Angeles, CA 90064
> Attention:      Adam Reich
> Telephone:      (310) 248-2979
> Fax:            (213) 383-5985
>
> Silicon Valley Disposition, a California corporation
> 226 First Avenue, Suite #2
> San Mateo, CA 94401
> Attention:      Kirk Dove
> Telephone:      (650) 344-3282
> Fax:            (650) 344-3182
>
> (together, the "Sales Agent")

WHEREAS, Seller wishes to sell certain assets, and Sales Agent has agreed to conduct an offering and sale process for such assets on the terms and conditions set forth below;

16967839.3

WHEREAS, following the execution of this Agreement, Seller anticipates that it will file and commence a voluntary Chapter 11 bankruptcy case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of New York, Poughkeepsie Division (the "Bankruptcy Court");

WHEREAS, this Agreement, Seller's retention of Sales Agent, the offering and sale process described herein, and the sale of Seller's assets, are subject to approval of the Bankruptcy Court in the Bankruptcy Case;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are mutually acknowledged, Sales Agent and Seller agree as follows:

**1. REPRESENTATION**: Seller agrees to retain Sales Agent on an exclusive basis to offer for sale and conduct an auction (the "Auction") of the assets. (the "Assets") set forth on Exhibit A to this Agreement.

### 2. CONDUCT OF THE AUCTION:

The Auction will be conducted on or about September 15, 2011, or on such other date as mutually agreed upon by the parties to this Agreement and approved by the Bankruptcy Court. At all times the Auction will be conducted on site and over the Internet using webcast technology. In order to maximize the value of the Assets for the benefit of Seller's stakeholders, Sales Agent will offer the Assets for sale in aggregate and by the piece. Upon conclusion of the Auction, it will be determined if the greatest value will be generated by the aggregate or piecemeal bids.

Seller agrees that Sales Agent *may* use its name, street address and logo in its advertising in accordance with Sales Agent's customary practice, including on its Website as well as in any press release, solely to perform services under this Agreement. Unsold items, if any, shall revert back to the Seller at the conclusion of the post Auction removal period. Sales Agent shall not be responsible for the removal of any unsold items.

**3. DISCLAIMERS OF WARRANTIES**: Sales Agent shall state both in its advertising for the Auction and at the Auction that all Assets are being sold "as is, where is and with all faults" and with any additional disclaimers of warranty, including disclaimers of the warranties of merchantability and fitness for a particular purpose (but excluding any in-place maintenance agreements that are transferable without obtaining any third party consents). Seller agrees to defend and indemnify Sales Agent and hold Sales Agent harmless from and against any claim or liability asserted against Sales Agent by any third party (including any purchaser of any Assets at the Auction) based on the alleged existence or breach of any alleged warranties (including alleged warranties of merchantability or fitness for a particular purpose), or from or against any fees or expenses (including attorney's fees) incurred by Sales Agent in defending against any such claim or liability. Seller acknowledges and agrees that Sales Agent has no knowledge with respect to, and has no obligation to investigate, the merchantability or fitness for any particular use of any Asset.

**4. COMPENSATION**: Sales Agent shall not charge Seller any commission or fee for the services provided by Sales Agent. Sales Agent shall charge each successful bidder a buyer's premium (the "Buyer's Premium") for its own account as compensation for services provided up to and including the actual Auction event. The amount of the Buyer's Premium shall be fifteen percent (15%) of the gross sale proceeds and shall be allocated by and between Sales Agent and Seller as follows:

| GROSS SALE PROCEEDS | ALLOCATION OF BUYER'S PREMIUM |
|---|---|
| $0 - $5,000,000 | 100% of 15% Buyer's Premium to Sales Agent |
| $5,000,001 - $8,000,000 | 12.5% to Sales Agent/2.5% to Seller |
| $8,000,001 – and up | 11.5% to Sales Agent/3.5% to Seller |

Seller shall not be liable to Sales Agent for any Buyer's Premium in the event that a purchaser fails to live up to its agreement and complete a purchase.

### 5. AUCTION EXPENSES

(a) Advertising and Direct Marketing: Seller shall provide Sales Agent an allowance toward certain out-of-pocket Auction advertising expenses, which may include digital photography of the Assets, print and electronic media production, creative services, ad placement fees, brochure and catalog production, telemarketing, data list purchases, fax and email advertising and postage incurred in connection with the Auction.

(b) Labor: Seller agrees to reimburse Sales Agent for labor expenses related to the Auction. Such labor includes services rendered in connection with the collection and disbursement of Auction proceeds (as discussed under Section 7 below). Seller has the right to provide its own labor in part or in whole (or subcontract to third parties) in connection with such services at its election as long as such persons demonstrate adequate competencies related to such services.

(c) Travel and Lodging: Seller agrees to reimburse Sales Agent for Sales Agent's reasonable, out-of-pocket travel expenses related to the Auction.

(d) Miscellaneous: Seller also agrees to reimburse Sales Agent for miscellaneous expenses related to the Auction, including transportation of equipment to HGP warehouse, accounting, equipment rental, insurance, permits, and security/armored cars.

Expenses incurred pursuant to subsections (a) through (d) (collectively referred to as the 'Auction Allowance") shall not exceed $50,000.00.

(e) Seller acknowledges and agrees that the Auction Allowance shall in all events be deducted from the gross proceeds and paid to Sales Agent following the Auction, subject to any required approval by the Bankruptcy Court of the expenses comprising the Auction Allowance. Sales Agent shall promptly provide to Seller reasonable documentation evidencing the expenses comprising the Auction Allowance. For purposes of this Agreement, 'gross proceeds' means all revenue from the sale of Assets pursuant to this Agreement, excluding (i) any sales taxes collected by Sales Agent, and (ii) any Buyer's Premium collected pursuant to Section 4.

**6. PRE- AUCTION ASSET TRANSACTIONS:** Prior to the Auction, Seller may not withdraw, sell or otherwise dispose of any of the Assets listed in Exhibit A; provided, however, any sale of Assets prior to the Auction shall be subject to full compensation to Sales Agent pursuant to this Agreement.

### 7. COLLECTION AND DISBURSEMENT OF AUCTION PROCEEDS:

(a) Sales Agent shall collect from the purchasers of the Assets the gross proceeds, any applicable sales taxes and amounts due as Buyer's Premium and deposit such funds into a bank depository account. All applicable sales taxes collected by Sales Agent shall be paid to the appropriate taxing authorities out of the account. Thereafter, no later than 15 calendar days after the Auction, Seller shall be issued a check from the account (a 'Settlement Check'), in the amount of the net auction sale proceeds (after Sales Agent has been paid from the account its reimbursable expenses pursuant to Section 5 and amounts allocable to the Sales Agent's portion of the Buyer's Premium), subject to open items or uncollected accounts, if any. Notwithstanding any other provision of this Agreement, all sales of Assets are subject to approval of the Bankruptcy Court.

(b) No later than 30 calendar days after the Auction, Sales Agent shall also issue to Seller a settlement report (the "Settlement Report) showing a true, correct and complete record of sales of the Assets and the allocation of the funds generated by such sales, subject to open items or uncollected accounts, if any.

3

**8. ASSET TRANSPORTATION, SUBSEQUENT AUCTIONS AND RIGHT OF SURRENDER**: If needed, Asset transportation to the sale facility prior to the Auction shall be arranged and paid for by Seller. In the event that walls or other structures must be removed or modified to remove the Assets sold at the Auction, all supervision and expense of such removal and modification shall be borne directly by the Seller and are not included in the Auction Allowance. Any labor costs that Seller directly or indirectly incurs in connection with the Auction shall be borne directly by Seller and are not included in the Auction Allowance. In the event that some Assets remain unsold at the conclusion of the Auction, or a purchaser fails to perform his obligation to pay the purchase price of an Asset, Sales Agent may, at its discretion, have the option of including those Assets in up to two subsequent auctions. If Assets remain unsold after two subsequent auctions, or if Sales Agent chooses not to include such Assets in any subsequent auction, then Sales Agent shall surrender the Assets to Seller, and will have no further obligation with respect to such Assets ("Unsold Assets').

**9. UTILITY DISCONNECTION AND ASSET REMOVAL**: Immediately after a sale at the Auction, Seller shall disconnect all utilities to the sold Asset, including electric, gas, waste and water lines, in a reasonable manner designed to protect the Asset and the facility, at Seller's sole cost. Thereafter, the purchaser shall be solely responsible for rigging and shipping the sold Asset. Under no circumstances shall Sales Agent be responsible for any loss, damage or destruction associated with asset removal or disconnection, except to the extent that such loss, damage or destruction results from the negligence, recklessness or intentional acts of Sales Agent. Seller acknowledges that with respect to any export transaction involving any of the Assets sold hereunder, and unless Seller and purchaser agree otherwise, Seller shall be the U.S. principal party in interest. Accordingly, Seller authorizes Sales Agent to provide Seller's federal employer identification number ('EIN') to purchasers, their agents, customs officials or similar parties for the purposes of completing a Shipper's Export Declaration form or any documentation necessary to facilitate the respective purchaser's export of the purchased Assets.

**10. INSURANCE**: Seller shall be solely responsible for maintaining adequate insurance coverage pertaining to the Assets and their transfer to and from, and storage at, Auction sites. If the Auction is to occur at premises owned or leased by Seller, Seller also shall maintain adequate liability insurance for the duration of the Auction and related activities. Sales Agent shall carry all workers' compensation insurance for Sales Agent's employees in compliance with all applicable state and local laws.

**11. DESTRUCTION OF ASSETS**: In the event of any loss, damage or destruction of any Assets, whether before or after the Auction, Seller shall remain liable to Sales Agent for Sales Agent's reimbursable expenses under Section 5. In the event of loss, damage or destruction of any Assets after sale at the Auction, Sales Agent also shall be entitled to its Buyer's Premium under Section 4, except to the extent that such loss, damage or destruction results from the negligence, recklessness or intentional acts of Sales Agent or the purchaser. Seller agrees that, upon collection of any insurance proceeds payable on account of the destruction of any or all of the Assets after sale but prior to payment by a purchaser, Seller shall pay to Sales Agent a portion of such proceeds sufficient to pay Sales Agent's reimbursable expenses under Section 5, any applicable sales taxes and amounts payable as Buyer's Premium under Section 4 (collectively, the "Recovery Obligations"). The obligation from the preceding sentence shall survive until Seller has paid to Sales Agent all amounts owing under the Recovery Obligations.

**12. USE OF PREMISES**:

(a) For the purposes of this Agreement, the "Premises" shall mean 2070 Route 52, Bldg 334 Zip 23A, Hopewell Junction, New York or other such other location as is mutually agreed upon. Seller authorizes Sales Agent and its representatives, during normal business hours and upon reasonable advance notice, to enter upon and use the Premises for the purposes of (i) storing the Assets thereupon, (ii) preparing for and conducting sales of the Assets, (iii) otherwise exhibiting the Assets to prospective purchasers, and (iv) for such other purposes as are reasonable and necessary to conduct the Auction. Seller agrees that Sales Agent shall not be charged a fee for the use of the Premises. Seller further agrees that it shall furnish utilities to the Premises, at Seller's sole expense.

4

(b) Seller acknowledges and agrees that Sales Agent has no interest of any kind or nature in the Premises, and that Sales Agent has no knowledge as to any previous use or occupancy of the Premises. Seller acknowledges and agrees that Sales Agent shall not be responsible for damage or injury to the Premises resulting from or arising in connection with the sale or removal of the Assets, except to the extent that such damage or injury is caused by Sales Agent's negligence, recklessness or intentional acts.

**13. REPRESENTATIONS AND WARRANTIES:** Seller represents and warrants to Sales Agent as follows:

(a) Seller is authorized to execute and perform this Agreement. Subject to the approval by the Bankruptcy Court of this Agreement, this Agreement constitutes a valid and legally binding obligation of Seller, enforceable in accordance with its terms.

(b) Seller now holds (and, up to the moment of the Auction or other sale provided for under this Agreement, will hold) good and marketable title to all Assets.

(c) To Seller's actual knowledge, none of the Assets infringes or violates (or contains any parts or components which infringe or violate) any third party's copyright, patent, trademark, trade secret or other proprietary rights.

(d) No sale of the Assets will constitute a bulk sale subject to the Bulk Transfer Article of the Uniform Commercial Code for any state in which any of the Assets are located (the "Bulk Transfer Article").

(e) No Hazardous Substances are contained in or made a part of the Assets. For purposes of this Agreement, the term 'Hazardous Substances' shall mean, either individually or collectively, any chemical, solid, liquid, gas, or other substance having the characteristics identified in, listed under, or designated pursuant to (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) as amended, 42 USCA Section 9601 (4), as a "hazardous substance," (ii) the Resource, Conservation and Recovery Act, 42 USCA Sections 6903(5) and 6921, as a "hazardous waste," or (iii) any other laws, statutes, or regulations of a government or political subdivision or agency thereof, as presenting an imminent and substantial danger to the public health or welfare or to the environment, or as otherwise requiring special handling, collection, storage, treatment, disposal, or transportation. Seller agrees that nothing in this Agreement shall be construed to require Sales Agent to remove any Hazardous Substances that are present on the Premises or are contained in a part of the Assets.

(f) None of the Assets or any components thereof, or related software or technology requires a U.S. Government license for export from the United States to countries other than those which are subject to comprehensive embargoes or support for terrorism (currently, Cuba, Iran, North Korea, Sudan, or Syria, as the same may change from time to time) except those specifically listed in writing delivered by Seller to Sales Agent, with the respective Export Control Classification Numbers for such listed Assets.

Seller acknowledges and agrees that Sales Agent is relying on the foregoing representations and warranties in proceeding to conduct the Auction and/or sales provided for under this Agreement. Seller agrees to defend and indemnify Sales Agent and hold Sales Agent harmless from and against any claim, demand, cause of action, liability or, expense (including reasonable attorneys' fees) asserted against or incurred by Sales Agent in connection with Seller's breach of any of its representations, warranties or obligations in this Agreement. If any action at law or in equity is brought to enforce the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs from the other party.

**14. LIMITATION OF LIABILITY:** Sales Agent's maximum liability for the breach of any obligation in connection with this Agreement or the Auction, and for any and all damages of any type or nature (whether in contract, tort or otherwise) sustained or claimed by Seller or any other person or entity in

5

connection with this Agreement or the Auction, shall be limited to the amounts actually received by Sales Agent as compensation under this Agreement; provided, however, the limitations contained in this Section 14 shall not apply to any damages resulting from gross negligence, recklessness or intentional acts of Sales Agent.

**15. TECHNOLOGY DISCLAIMER: SALES AGENT DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN THE WEBSITE, INCLUDING ANY THIRD-PARTY SOFTWARE, PRODUCTS OR OTHER MATERIALS USED IN CONNECTION WITH THE WEBSITE, WILL BE TIMELY, SECURE, UNINTERRUPTED OR ERROR FREE, OR THAT DEFECTS WILL BE CORRECTED.**

**16. INDEPENDENT PARTIES**: This Agreement shall not be construed (i) to create a partnership or joint venture between Seller and Sales Agent, or (ii) to imply that Sales Agent is buying the assets of, or any interest in, Seller.

**17. BANKRUPTCY COURT JURISDICTION:** The parties agree to submit all controversies, claims and matters of difference arising out of or relating to this Agreement and the Auction to the Bankruptcy Court.

**18. COUNTERPARTS; FACSIMILE SIGNATURES**: This Agreement may be executed in any number of counterparts, each of which, when executed, will be deemed to be an original and all of which, when taken together, will be deemed to be but one and the same instrument. Delivering signatures via facsimile shall be an acceptable means of executing this Agreement, and signatures so delivered shall be fully binding on the signing party.

**19. GOVERNING LAW; JURISDICTION**: This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of New York as applied to agreements made in New York, without regard to choice at law principles.

**20. SEVERABILITY**: The provisions of this Agreement shall be severable. Should any part, term or provision of this Agreement be construed by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the legality, validity and enforceability of the remaining parts, terms and provisions shall not be affected thereby.

**21. COMPLETE AGREEMENT**: This Agreement constitutes the entire understanding between the parties and replaces any and all prior agreements related to the Auction This Agreement may not be modified or amended except in writing signed by both parties.

Seller:  SpectraWatt, Inc.                                    Sales Agent:  Heritage Global Partners
F.E.I.N. 26-2694032                                           California Bond Number 6150320

By:   _Bradford C. Walker_                          By:   _____

Name:  BRAD WALKER                                   Name: _____

Title:  CRO / CEO                                            Title: _____

## EXHIBIT A

### DESCRIPTION OF THE ASSETS SUBJECT TO

### THE EXCLUSIVE SALES AGENT AGREEMENT TO WHICH THIS EXHIBIT

### IS ATTACHED AND MADE A PART OF ("AGREEMENT"):

As used throughout this AGREEMENT, the term "ASSETS" means, collectively, all of the machinery, equipment and other personal property that are located on the PREMISES as of the effective date of this AGREEMENT and that are described on the schedule of assets which is attached hereto and made a part hereof.

Notwithstanding the terms of the immediately preceding paragraph to the contrary, the term "ASSETS" specifically excludes the following which are not subject to the SALE or the terms of this AGREEMENT:

_____
_____
_____
_____
_____
_____.