THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION

---------------------------------------------------------x
In re:                                                        Chapter 11

SPECTRAWATT, INC.,                                Case No. 11-37366-CGM

                             Debtor.
---------------------------------------------------------x

**FINAL ORDER GRANTING DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361 AND 363 (I) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, AND (II) GRANTING ADEQUATE PROTECTION TO THE SERIES A-1 NOTEHOLDERS**
(relates to Docket No. 3)

Upon consideration of the Emergency Motion of SpectraWatt, Inc. (the "Debtor"), for entry of an Order (i) authorizing the Debtor to use cash collateral ("Cash Collateral"), and (ii) granting adequate protection to the Series A-1 Noteholders (the "Motion");[1] and upon consideration of the Declaration of Brad Walker, Chief Restructuring Officer and Chief Executive Officer, filed in Support of First Day Applications and Motions and the Affidavit of Brad Walker filed pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, sworn to on August 19, 2011; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the Interim Hearing before the Court on August 25, 2011, and the Final Hearing before the Court on September 19, 2011; and after due deliberation and consideration and sufficient cause appearing therefore;

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion related hereto.

IT IS FOUND, CONCLUDED, ORDERED AND ADJUDGED, that:

1. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. <u>Notice</u>. Notice of the Motion and of the Final Hearing was served by the Debtor upon: (i) the Office of the United States Trustee for this district and division; (ii) the Series A-1 Noteholder Agent, (iii) counsel for the Series A-1 Noteholder Agent; (iv) each of the secured lenders a party to the December 21, 2009 Loan and Security Agreement (the "<u>Loan Agreement</u>") (v) each of the Debtor's unsecured creditors; and (v) all other parties on the master service list proposed by the Debtor for this case. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(b).

3. <u>Prepetition Liens</u>. The Series A-1 Notes are secured by valid, enforceable, perfected and unavoidable first liens in favor of the Series A-1 Noteholders on substantially all of the Debtor's assets pursuant to the prepetition loan documents (the "<u>Prepetition Loan Documents</u>").[2]

4. <u>Cash Collateral</u>. All funds and cash investments of the Debtor, including any funds on deposit at any institutions, are asserted as cash collateral of the Series A-1 Noteholder Agent and the Series A-1 Noteholders within the meaning of Bankruptcy Code section 363(a). In addition, all cash proceeds of Prepetition Collateral (and investments thereof) received after the Petition Date are cash collateral of the Series A-1 Noteholder Agent and the Series A-1 Noteholders within the meaning of Bankruptcy Code section 363(a). All such cash collateral (including, without limitation, funds subject to any setoff rights) are referred to herein as "<u>Cash Collateral</u>."

---

[2] Notwithstanding anything to the contrary in this Order, the Debtor reserves any and all rights and claims as against Roth & Rau AG and Crystalox Limited ("<u>Non-Cash Lenders</u>"), whether related to the contractual relationships or otherwise, and nothing herein shall waive any right of the Debtor against the Non-Cash Lenders, subject to any other Court order resolving such claims.

5. <u>Certain Findings Regarding The Debtor's Need To Use Cash Collateral</u>:

(a) An immediate and critical need exists for the Debtor to be permitted access to funds in order to continue to operate its business. Without the use of such funds, the Debtor will not be able to pay its payroll and other direct operating expenses. As a result, there is a risk that the value of the Debtor's assets will decline if the Debtor cannot make use of Cash Collateral (as defined above), in which case the Debtor, its estate, and its stakeholders will be irreparably harmed;

(b) Good cause has been shown for the entry of this Order. The Cash Collateral use arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate. Absent the use of the Cash Collateral, the Debtor's estate will not have necessary funds to satisfy its obligations as they become due. Allowing the use of the Cash Collateral therefore is in the best interests of the Debtor's estate and its creditors;

(c) The Cash Collateral use and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length, and the terms of such Cash Collateral use and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration;

(d) The Debtor has stipulated[3] that pursuant to the Prepetition Loan Documents, the Debtor was truly and justly indebted and liable to the Series A-1 Noteholder Agent and the Series A-1 Noteholders, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $25,397,113.88[4] as of August 19, 2011 in respect of loans made by the Series A-1 Noteholder Agent and the Series A-1 Noteholders pursuant to the Prepetition Loan Documents, plus fees and expenses incurred in connection therewith as

---

[3] The Debtor's stipulations in this paragraph 5(d) and in paragraph 5(e) are not binding on other parties. All other parties must file any objections to the validity of the Debtor's pre-petition debt or liens within sixty (60) days of the entry of this Order.

[4] An additional $12,752,663.87 is reflected as the balance owing under the Notes held by Roth & Rau AG, but the Debtor reserves all rights as against Roth & Rau AG subject to any other Court order resolving such claims. Additionally, a total of $6.4 million in notes were issued and are now held in escrow to secure the contractual claim of Crystalox Limited. The Debtor reserves all rights as against Crystalox Limited and any affiliate thereof.

provided in the Prepetition Loan Documents (collectively, together with any other amounts outstanding under the Prepetition Loan Documents, the "Prepetition Debt");

(e) The Debtor has stipulated that the liens and security interests granted to the Series A-1 Noteholder Agent and the Series A-1 Noteholders pursuant to the notes, security agreement and other security documents executed in connection with the Prepetition Debt are valid, perfected, enforceable, non-voidable, first-priority liens and security interests in substantially all of the assets of the Debtor (the "Prepetition Collateral"). All other parties must file any objection to the liens and security interests granted to the Series A-1 Noteholder Agent and the Series A-1 Noteholders within sixty (60) days from the entry of this Order; and

(f) The Debtor requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2). This Court concludes that entry of this Order is in the best interests of the Debtor, its estate, and its creditors as its implementation will, among other things, allow for the continued operation of the Debtor's existing business.

6. Use of Cash Collateral. Except as otherwise set forth herein, the Debtor is hereby authorized to use Cash Collateral in the ordinary course of its business in accordance with the budget annexed hereto as Exhibit A (the "Budget") and all terms and conditions set forth herein, and to perform its obligations hereunder, provided that, the Series A-1 Noteholder Agent and the Series A-1 Noteholders are granted adequate protection as hereinafter set forth, and provided, further, that, absent the written consent of the Series A-1 Noteholder Agent, the Debtor shall cease to be authorized to use Cash Collateral pursuant to this Order upon the occurrence of the Termination Date (as hereinafter defined). The Series A-1 Noteholder Agent and the Series A-1 Noteholders shall not have any obligations or commitments under the Prepetition Loan Documents other than those that are explicitly set forth in this Order.

7. Budget and Covenants. Neither the failure of the Series A-1 Noteholder Agent or any of the Series A-1 Noteholders to object to the Budget, nor the consent or agreement by the Series A-1 Noteholder Agent or any of the Series A-1 Noteholders to the Budget, shall constitute or be deemed a waiver or admission of any kind.

(a) The annexed Budget contains weekly budgets (the "Weekly Budget Period"). Provided that the Debtor complies with the terms of this Order and the Budget, the Debtor is hereby authorized to use Cash Collateral in accordance with and at the times set forth in the Budget. The Debtor's authorization to use Cash Collateral shall terminate upon the expiration of the period covered by the Budget.

(b) The Debtor's use of Cash Collateral is conditioned upon compliance by the Debtor with this Order, the Budget and that actual weekly cash out-flows, on a cumulative basis, must be less than or equal to the weekly cash out-flow levels set forth in the Budget on a cumulative basis.

8. <u>Reporting</u>. The Debtor shall provide the Series A-1 Noteholder Agent and the Series A-1 Noteholders with the following reporting:

(a) Weekly reports in the same format as provided pre-petition each Tuesday during the period covered by the Budget. Such reports shall (a) include prior week actual financial results compared to the budgeted amounts for each such week and an explanation of any material variances, and (b) demonstrate compliance with this Order; and

(b) If requested, a copy of the Debtor's check book register and all checks and wires issued by the Debtor.

9. <u>Entitlement to Adequate Protection</u>. The Debtor is currently in possession of cash that is asserted as Prepetition Collateral and may generate additional Cash Collateral from the sale or other disposition of Prepetition Collateral. As such, the Series A-1 Noteholder Agent and the Series A-1 Noteholders are entitled, pursuant to sections 361 and 363(c)(2) of the Bankruptcy Code, to adequate protection in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including, without limitation, the Cash Collateral, including a perfected first priority senior security interest in and lien upon all other prepetition and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, including, without limitation, all cash or investment funds whether existing or hereinafter acquired and all accounts receivable, contracts, documents, equipment, general intangibles,

instruments, inventory, interests in leaseholds, and the proceeds of all of the foregoing. Such post-petition liens shall have the same validity, priority and extent as the pre-petition liens asserted by the Series A-1 Noteholders.

10. <u>Sections 506(c) and 552(b) Waiver</u>. The Debtor irrevocably waives and shall be prohibited from asserting any surcharge claim under section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment), for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Series A-1 Noteholder Agent or any of the Series A-1 Noteholders, Cash Collateral or the Prepetition Collateral (as applicable). In no event shall the Series A-1 Noteholder Agent or any of the Series A-1 Noteholders be subject to (i) the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code or (ii) the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Cash Collateral or the Prepetition Collateral (as applicable).

11. <u>Perfection of Adequate Protection Liens</u>. The liens granted to the Series A-1 Noteholder Agent and the Series A-1 Noteholders hereunder shall be deemed valid, perfected, allowed, enforceable, as of the date of entry of this Order.

12. <u>Super Priority Administrative Expense</u>. Upon the entry of this Order the Series A-1 Noteholder Agent and the Series A-1 Noteholders shall at all times have a super priority administrative expense claim (the "Super Priority Administrative Expenses"), having priority, pursuant to section 507(b) of the Bankruptcy Code, over any other administrative expenses or claims of any entity, including, without limitation, any administrative expenses or claims under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114 or otherwise, including those resulting from the conversion of this chapter 11 case pursuant to section 1112 of the Bankruptcy Code; <u>provided</u>, however, that such priority shall not be prior to the Carve-Out or any expense listed in the Budget up to the Termination Date.

13. <u>Priority Of Adequate Protection Liens and Administrative Expenses</u>. The

Adequate Protection Liens and Super Priority Administrative Expenses shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code, or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board or court for any liability of the Debtor; provided, however, that such priority shall not be prior to the Carve-Out.

14. Perfection Of Liens. Neither the Series A-1 Noteholder Agent nor the Series A-1 Noteholders shall be required to file or record any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the respective security interests and liens granted to them pursuant to this Order. This Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens. If the Series A-1 Noteholder Agent chooses, in its sole discretion, to file a copy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction, the applicable filing or recording official is authorized and directed to file or record this Order for such purpose.

15. Preservation of Rights Granted Under This Order. Except as otherwise specifically provided in this Order:

(a) If an order dismissing this chapter 11 case is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the claims, liens and security interests granted pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all obligations in respect thereof shall have been paid and satisfied in full (and that such claims, liens and security interests shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above; and

(b) if any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any obligation, indebtedness or liability incurred by the Debtor to the Series A-1 Noteholders prior to written notice to the Series A-1 Noteholder Agent of the effective date of such reversal, stay, modification or vacation, or (ii) the validity and enforceability of any lien or security interest, or priority authorized or created hereby with respect to any such obligation, indebtedness or liability.  Notwithstanding any such reversal, stay, modification or vacation, any indebtedness, obligation or liability incurred by the Debtor to the Series A-1 Noteholder Agent or any the Series A-1 Noteholders prior to the actual receipt of written notice by the Series A-1 Noteholder Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and Series A-1 Noteholder Agent and all of the Series A-1 Noteholders shall be entitled to all the rights, remedies, privileges and benefits granted in this Order and pursuant to the Prepetition Loan Documents with respect to all and such indebtedness, obligation or liability.

16. <u>Carve-Out</u>.  For purposes hereof, the "<u>Carve-Out</u>" means a priority lien in all Cash Collateral and any disposition proceeds of the sale of collateral of the Series A-1 Noteholders, which lien shall be in all respects superior to the liens of the Series A-1 Noteholders.  The Carve Out shall run to the benefit of:  i) attorneys, accountants and other professionals retained in this case by the Debtor, whether under section 327 or 363, as of the Termination Date (for clarity, this shall include the fees and expenses of the Debtor's CRO, Debtor's primary bankruptcy counsel and all ordinary course professionals retained by the Debtor) (the "<u>Estate Professionals</u>"), the United States Trustee and to the Clerk of the Court.  The Carve-Out shall take effect upon the Petition Date and shall include amounts accruing during the period up to and including the Termination Date.  The Carveout shall include the following amounts:  i) any and all accrued and unpaid fees of the Estate Professionals up to the aggregate budgeted amount; ii) all amounts provided for and paid pursuant to any order approving interim fee procedures or authorizing payments to ordinary course professionals; iii) any amounts payable pursuant to 28 U.S.C. § 1930(a)(6) (United States Trustee Fees) and any

fees payable to the clerk of the Bankruptcy Court; and iv) the sum of $100,000,[5] $5,000 of which shall be allocated for Chapter 7 fees and expenses in the event the case is converted to Chapter 7 (the "Chapter 7 Carveout"). To the extent any portion of the Chapter 7 Carveout is not utilized, such funds shall remain available as part of the $100,000 Carveout. Notwithstanding anything to the contrary herein, the Carveout may not be used for the payment of any professional fees or disbursements incurred in connection with (i) attempting to obtain, without the consent of the Series A-1 Noteholders Agent, the Court's authorization to use Cash Collateral; or (ii) challenging the amount, extent, priority, validity, perfection or enforcement of the Prepetition Debt or to recover any funds previously paid to the Series A-1 Noteholder Agent or any of the Series A-1 Noteholders. This Carveout shall be superior to the rights of any succeeding trustee.

17.     Limitations on Use of Cash Collateral. Notwithstanding anything herein to the contrary, no Cash Collateral may be used to (i) object, contest or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Debt, the liens securing the Prepetition Debt, or the liens granted to the Series A-1 Noteholder Agent or any of the Series A-1 Noteholders by this Order, (ii) assert any claims or causes of action against the Series A-1 Noteholder Agent or any of the Series A-1 Noteholders, or (iii) as long as the Debtor is authorized or able to continue to use Cash Collateral pursuant to the terms of this Order and the Termination Date has not occurred, attempt to obtain, without the consent of the Series A-1 Noteholder Agent, or over the objection of the Series A-1 Noteholder Agent or any of the Series A-1 Noteholders, the Court's authorization to use Cash Collateral under terms other than those provided herein.

18.     Events Of Default. Unless the Series A-1 Noteholder Agent shall have provided its prior written consent or written waiver, or the Prepetition Debt shall have been indefeasibly paid in full in cash in whole, each of the following, in addition to the applicable provisions in

---

[5] A portion of the $100,000 that is part of the Carveout could be made available for an official committee, if one is appointed in this case.

the Prepetition Loan Documents, shall constitute an "Event of Default":

(a) The issuance of an order staying, reversing, modifying or vacating this Order or any further cash collateral order, as applicable;

(b) With respect to a sale of substantially all of the Debtor's assets, (i) the Debtor's failure to obtain entry of a bid procedures order by September 30, 2011 in a manner acceptable to the Series A-1 Noteholder Agent, or (ii) absent the prior written consent of the Series A-1 Noteholder Agent, the Debtor's failure to obtain approval of an asset sale under Bankruptcy Code section 363 by October 31, 2011;

(c) The entry of an order dismissing the Debtor's chapter 11 case, converting the case to chapter 7, or appointing a chapter 11 trustee or an examiner with expanded powers in the case;

(d) Any action by the Debtor, including the filing of an application, in support of any of the foregoing Events of Default;

(e) The breach by the Debtor of any term or provision of this Order or any further cash collateral order;

(f) The acquisition by any post-petition lender to the Debtor of a post-petition security interest in or lien upon any property of the Debtor having parity with or priority over the security interest and liens in such property held by the Series A-1 Noteholder Agent or any Series A-1 Noteholder; or

(g) The entry of an order by any court that terminates the authority of the Debtor to conduct all or any material part of its business.

19. In the event of a default under any other provision of this Order, or the Prepetition Loan Documents, and upon filing of a notice by the Series A-1 Noteholder Agent with the Court ("Default Notice") and served on the parties to the case, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified, following seven (7) days after the Default Notice to the extent necessary for the Series A-1 Noteholder Agent and the Series A-1 Noteholders to exercise any rights and remedies provided under the

terms of this Order and/or the Prepetition Loan Documents, and terminating the Debtor's authorization to use Cash Collateral following five days notice, other than for the Carve-Out or claims provided in the Budget which have accrued up to the Termination Date.

20. <u>Reservation of Rights Of Series A-1 Noteholder Agent and the Series A-1 Noteholders</u>. The Series A-1 Noteholder Agent and the Series A-1 Noteholders reserve the right to request further or different adequate protection in the future.

21. <u>Fair and Reasonable</u>. The terms of the use of Cash Collateral pursuant to this Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

22. <u>Successors and Assigns</u>. The provisions of this Order shall be binding upon the Series A-1 Noteholder Agent and the Series A-1 Noteholders, the Debtor, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the Debtor's estate) and inure to the benefit of the Series A-1 Noteholder Agent and the Series A-1 Noteholders and the Debtor and (except with respect to any trustees hereinafter appointed or elected for the Debtor's estate) their respective successors and assigns.

23. <u>Effectiveness</u>. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order.

24. <u>Termination</u>. Notwithstanding anything herein or in the Prepetition Loan Documents, the Debtor shall no longer, pursuant to this Order, the Prepetition Loan Documents, or otherwise, be authorized to use Cash Collateral, the Prepetition Collateral, or the Post Petition Collateral, and the use of Cash Collateral shall be terminated (the "<u>Termination Date</u>") upon (i) expiration of the period covered by the Budget or (ii) the occurrence of an Event of Default, the filing and service of the Default Notice and the time provided for such service as provided in this Order.

SIGNED this 20th day of September, 2011, in Poughkeepsie, NY.

*/s/ Cecelia G. Morris*
UNITED STATES BANKRUPTCY JUDGE