**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**

-------------------------------------------------------x
In re:                                          Chapter 11

SPECTRAWATT, INC.,                              Case No. 11-37366-CGM

                         **Debtor.**
-------------------------------------------------------x

**FINAL ORDER GRANTING DEBTOR'S MOTION
PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 FOR ENTRY OF
AN ORDER (A) AUTHORIZING AND SCHEDULING AN AUCTION AT
WHICH THE DEBTOR WILL SOLICIT THE HIGHEST OR BEST BID(S)
FOR THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS, (B) APPROVING
PROCEDURES RELATED TO THE CONDUCT OF AN AUCTION, (C) FIXING
THE MANNER AND EXTENT OF NOTICE, AND (D) GRANTING RELATED RELIEF**
(Related to Doc. No. 4)

Upon consideration of the Motion[1] of SpectraWatt, Inc. (the "Debtor") seeking entry of an order (a) authorizing and scheduling an Auction at which the Sales Agent, on behalf of and in concert with the Debtor, will solicit the highest or best bid or bids for the sale of substantially all of the Debtor's assets, (b) approving a sale and bidding process to be used in connection with the conduct of the Auction and the proposed sale of the Debtor's assets, (c) fixing the manner and extent of notice, and (d) granting related relief; and an interim hearing with respect to the Motion having been held on August 25, 2011 and a final hearing with respect to the Motion having been held on September 19, 2011 (the "Final Bidding Procedures Hearing"); and based upon all of the evidence proffered or adduced at the Final Bidding Procedures Hearing; and after consideration of any memoranda, objections, or other pleadings filed in connection with the Motion; and after consideration of the arguments of counsel made at the Final Bidding Procedures Hearing; and upon the entire record of this case; and it appearing that final approval of the Bidding Procedures

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

as requested in the Motion is in the best interests of the Debtor, its estates, creditors, employees and other stakeholders; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

A. The form and manner of notice of the Bidding Procedures and the Final Bidding Procedures Hearing shall be, and hereby are, approved as sufficient and adequate notice. No other or further notice in connection with the entry of this Order is or shall be required.

B. The Bidding Procedures were proposed by the Debtor in good faith with the goal of maximizing the value of the Business and the Assets for the benefit of all creditors of its estate. The Bidding Procedures will facilitate an orderly sale process.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted to the extent set forth in this Order. The following "Bidding Procedures" are hereby approved and shall be used in connection with the proposed sale of the Assets:

(i) Assets to Be Sold. The Sales Agent would be offering for sale substantially all of the tangible and intangible property of the Debtor (i.e., the Assets), other than the Excluded Assets (as defined below), in the lots or groups of lots set forth below in order to achieve the highest or otherwise best collective value for the Assets. The description of the lots are as follows:

(a) Lot 1: Bulk "Going Concern" Bid. Lot 1 shall consist of all tangible and intangible Assets of the Debtor's estate (other than the Excluded Assets), including, without limitation, (1) all Assets set forth in the Due Diligence Package (as defined below), (2) all machinery, equipment (including office equipment, computers, and office supplies), supplies of wet chemicals and aluminum paste, furniture, furnishings, fixtures and other items of tangible personal property located at the New York Facility, (3) all vehicles and lifting devices located at the New York Facility, (4) all licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like, in each case, to the

2

extent transferable without the consent of any governmental body, entity, division or authority, (5) all data and records relating to the Business or the Assets, including client and customer lists and records, referral sources, equipment logs, operating guides and manuals, creative materials, advertising materials, promotional materials, studies, reports, correspondence and other similar documents and records (all in the state in which such records and information currently exist); provided, however, that the Debtor shall be entitled to retain copies of such books, records, files and papers, and (6) all rights of the Debtor under any of the Debtor's executory contracts or leases, but only to the extent that a successful bidder designates an executory contract or lease for assumption and agrees to pay the Cure Costs (as defined below) associated with such executory contract or lease as part of its bid.

(b) Lot 2: Bulk Tangible Property Bid. Lot 2 shall consist of all tangible Assets of the Debtor's estate (other than the Excluded Assets), including, without limitation, (1) all tangible Assets set forth in the Due Diligence Package (as defined below), (2) all machinery, equipment (including office equipment, computers, and office supplies), supplies of wet chemicals and aluminum paste, furniture, furnishings, fixtures and other items of tangible personal property located at the New York Facility, and (3) all vehicles and lifting devices located at the New York Facility.

(c) Lots 3 through 551: Individual Items. Lots 3 through 551 shall consist of "piecemeal" lots that include substantially all of the Debtor's tangible Assets on an item by item basis, or individual items that remain following the acceptance of a Lot 1 or Lot 2 bid that omits a portion of the assets as excluded assets from such bid. A description of the items listed for sale in these Lots is set forth in the Due Diligence Package, as well as on the Sales Agent's website (www.hgpauction.com).

(d) Combinations. Any combinations of Lots 3 through 551 may be designated by a bidder; provided, however, that combination offers will only be permitted with the consent of the Debtor and Sales Agent.

(ii) Excluded Assets. Notwithstanding anything herein to the contrary, the Debtor shall retain, and Sales Agent shall not sell, convey, transfer, assign or solicit bids for, the following Assets of the Debtor (collectively, the "Excluded Assets"): (a) all cash and cash equivalents on hand (including, without limitation, all undeposited checks) and in banks or other financial institutions, (b) except as described above, all inventory (including, without limitation, raw materials, work in process and finished goods), (c) all accounts, accounts receivable, notes and others receivables (including all claims or actions against third parties related to the collectability thereof), (d) all utility deposits, security deposits, deposits held by parties to the executory contracts and unexpired leases (whether such contract or lease is assigned to a bidder or otherwise) and other deposits of any kind or

nature whatsoever, (e) all avoidance claims or other claims or causes of action of the Debtor, whether arising under the Bankruptcy Code, applicable state law or otherwise, and the proceeds thereof, including, without limitation, actions available to the Debtor under chapter 5 of the Bankruptcy Code, of whatever kind or nature, and whether asserted or unasserted, (f) all tangible property not located at the New York Facility as of the date of the Auction, (g) the minute books and organizational documents of the Debtor, all of the Debtor's financial and accounting records, and all tax records, (h) all tax refunds, credits and benefits and all net operating losses of the Debtor, and (j) all intellectual property including, without limitation, all patents, patent applications, patent rights, trademarks (registered and at common law), trademark registrations and applications, trade names, logos, trade dress, brand names, service marks (registered and at common law), service mark registrations and applications, domain names and other indicia of source, works of authorship, copyrights, copyright registrations and applications for registration, moral rights, know-how, trade secrets, customer lists (unless included as part of a Lot 1 bid, in which case customer lists shall not be an Excluded Asset), proprietary information, proprietary processes and formulae, databases and data collections, source and object codes, software, algorithms, architecture, structure, display screens, layouts, inventions, development tools, and all documentation and media. Notwithstanding the foregoing, the Debtor reserves the right to permit a Qualified Bidder to include any Excluded Asset in a bid for Lot 1, _provided_ that the Debtor is satisfied with the purchase price and other related terms of sale set forth in such bid, and _provided further_ that, in the event that the Debtor permits a Qualified Bidder to include an Excluded Asset in its bid for Lot 1, all other Qualified Bidders shall be permitted to include such Excluded Asset in their respective higher or better bids on Lot 1; provided, that notice will be provided of such modification at least five days prior to the Sale Hearing.

(iii) _Due Diligence Package and Inspection_. Each person interested in bidding on the Assets and/or participating in the Auction may request a due diligence package (the "_Due Diligence Package_"). The Due Diligence Package contains, among other things, a description of the Assets to be offered for sale at the Auction. All requests should be made to: Mark Castaldo, Senior Vice President Sales, Telephone: (203) 499-8309; Toll free: (877) 243-7411; mcastaldo@svdisposition.com. Inspections of the Assets can also be scheduled by contacting Mark Castaldo, contact information provided above. Additional information regarding the Assets, the Auction and the sale process are available on the Sales Agent's website (www.hgpauction.com). Lot 1 and Lot 2 bidders seeking information on wiring instructions should contact Ms. Toni Silva, King & Spalding LLP at (713) 495-8821.

(iv) _Qualification to Bid at the Auction_. Any person interested in bidding on the Assets being offered for sale at the Auction must deliver the following to the Sales Agent at or prior to the Auction:

(a) Parties interested in submitting bids for Lots 1 and 2 must provide a good faith deposit equal to two hundred fifty thousand dollars ($250,000) within forty-eight (48) hours prior to the Auction. The deposit must be in the form of a certified check directed to the Debtor's counsel trust account or by wire transfer to the Debtor's counsel trust account.

(b) Following the conclusion of the Auction, each successful bidder for Lots 3 through 551 (or any combination thereof) must provide a deposit equal to no less than twenty five percent (25%) of the amount of such bidder's successful bid (excluding any buyer's premium) within twenty-four (24) hours of the conclusion of the Auction. The deposit must be in the form of a certified check made out to the Sales Agent, via wire transfer to an account designated by the Sales Agent or otherwise submitted through the Sales Agent's website via credit card, debit card, bank transfer or other available method set forth on the Sales Agent's website. The Sales Agent will demonstrate appropriate assurance for any deposit.

(c) Bids for Lots 1 and 2 must include evidence satisfactory to the Sales Agent and the Debtor in their commercially reasonable discretion, prior to any bid at the Auction, that the party making such bid is willing, authorized, capable and qualified financially, legally and otherwise, of closing a purchase of the Lot 1 or Lot 2 Assets (as applicable) in cash in the event that it submits a Prevailing Bid (as hereinafter defined) at the Auction.

(d) Bids for Lot 1 must contain a signed definitive asset purchase agreement in the form attached hereto as <u>Exhibit A</u> (the "<u>Form Purchase Agreement</u>"), together with a copy of the signed agreement that is marked to show changes from the Form Purchase Agreement. At a minimum, such asset purchase agreement must (1) clearly set forth the purchase price to be paid, (2) include a list of all executory contracts and leases that are to be assumed and assigned to bidder as part of the purchase, (3) provide that the bidder shall be responsible for paying all Cure Costs necessary to cure such executory contracts and leases and shall be responsible for providing evidence at the Sale Hearing necessary to demonstrate adequate assurance of future performance under such executory contracts and leases, (4) have substantially similar terms and conditions as the Form Purchase Agreement, (5) contain terms and conditions no less favorable to the Debtor's estate than the terms and conditions in the Form Purchase Agreement, (6) not be subject to any financing contingency, contingency relating to the completion of unperformed due diligence, contingency relating to the approval of the bidder's board of directors or other internal approvals or consents, or conditions precedent to the overbidder's obligation to purchase the Assets other than those included in the Form Purchase Agreement, (7) provide for a closing date of not later than the Closing Deadline (as defined below), and (8) not provide for the payment

to the bidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement.

None of the bids may contain any financing, due diligence or "material adverse change" contingencies and the bid of any Prevailing Bidder will be binding whether or not (a) the Prevailing Bidder has obtained financing or completed its due diligence investigation, or (b) a "material adverse change" has occurred. Any party satisfying the conditions of this section of the Bidding Procedures shall be permitted to participate in the Auction and shall be considered a "<u>Qualified Bidder</u>" as such term is used herein.

(v) <u>Pre-Auction Bidding</u>. All bidding for the Assets will occur at the Auction. Notwithstanding the foregoing, a Qualified Bidder shall be permitted to submit a bid to the Sales Agent prior to the Auction and designate the Sales Agent as its proxy to make such bid on its behalf at the Auction.

(vi) <u>Terms of Sale</u>. The Assets are being sold, (i) **"AS IS, WHERE IS, AND WITH ALL FAULTS,"** and the Debtor expressly disclaims all warranties, including (but not limited to) warranties of merchantability and fitness for a particular purpose or use, and (ii) **"THERE IS NO WARRANTY RELATING TO QUIET ENJOYMENT, OR THE LIKE IN THE DISPOSITION OF ANY OF THE ASSETS."** Bidders are advised, and by submitting a bid each bidder is deemed to acknowledge, that the Sales Agent, the Debtor and each of their respective directors, officers, managers, employees, agents, advisors and attorneys have no knowledge with respect to, and have no obligation to investigate, the merchantability or fitness for any particular purpose or use of any of the Assets. **NO WARRANTY OR REPAIR PROGRAM FOR THE ASSETS IS BEING OFFERED AS PART OF THE SALE.** Notwithstanding the foregoing, in the event a bid for Lot 1 equals or exceeds $9.25 million, a limited warranty may be provided subject to the specific terms and conditions as set forth in an agreement with the Debtor's primary equipment supplier.

(vii) <u>Auction</u>. The Sales Agent shall conduct a live public auction sale of the Assets at **10:00 a.m. (local time in Hopewell Junction, New York) on September 28, 2011** at the New York Facility (the "<u>Auction</u>"). At all times, the Auction will be conducted on site at the New York Facility and over the internet using webcast technology through the Sales Agent's website. Prior to receiving bids for the Assets at the Auction, the Sales Agent will read the Bidding Procedures for the benefit of those in attendance and announce any additional terms of sale not otherwise set forth in the Bidding Procedures.

At the Auction, the Sales Agent will begin by soliciting bids for the Assets included in Lot 1. Qualified Bidders may submit successive bids for Lot 1 in increments of at least $100,000 greater than the prior bid until there is only one offer that the Sales Agent (in consultation with the Debtor) determines to be the highest bid for Lot 1. Upon determining the highest bid for Lot 1 (if any), the

Sales Agent will announce such bid as the final bid for Lot 1 and no additional bids on Lot 1 shall be solicited or received by the Sales Agent at or after the Auction.

After closing the bidding on Lot 1, the Sales Agent will solicit bids for the Assets included in Lot 2. Qualified Bidders may submit successive bids for Lot 2 in increments of at least $100,000 greater than the prior bid until there is only one offer that the Sales Agent (in consultation with the Debtor) determines to be the highest bid for Lot 2. Upon determining the highest bid for Lot 2 (if any), the Sales Agent will announce such bid as the final bid for Lot 2 and no additional bids on Lot 2 shall be solicited or received by the Sales Agent at or after the Auction.

After closing the bidding on Lot 2, the Sales Agent will solicit bids for each of Lots 3 through 551. Qualified Bidders may submit successive bids for these lots in such bidding increments announced by the Sales Agent prior to each round of bidding on such lots, as determined by the Sales Agent in consultation with the Debtor, until there is only one offer with respect to each lot that the Sales Agent (in consultation with the Debtor) determines to be the highest bid for such lot. If, at any time during the Auction, the Sales Agent determines that the solicitation of bids on Lots 3 through 551 is unlikely to produce an aggregate offer that is higher or better than the bids received for Lots 1 or 2 (as applicable), the Sales Agent (upon receiving the consent of the Debtor) may cancel the Auction and certify the winning bid(s) and backup bid(s).

In conducting the Auction, the Sales Agent (in consultation with the Debtor) may set reserve prices and/or minimum starting bids with respect to any lot or combination of lots offered for sale at the Auction.

(viii) Prevailing Bid(s); Backup Bid(s). Upon the conclusion of the Auction, the Sales Agent and the Debtor shall (a) identify and certify the bid or bids that constitute the highest or best offer or offers for the Assets (each bid a "Prevailing Bid" and each person submitting such bid a "Prevailing Bidder"), and (b) identify and certify the bid or bids that constitute the next highest or best offer or offers for the Assets (each bid a "Backup Bid" and each person submitting such bid a "Backup Bidder"), and, in each case, notify the Prevailing Bidder(s) and Backup Bidder(s). In determining the Prevailing Bid(s) and the Backup Bid(s), the Sales Agent and the Debtor will consider, among other things: (a) the number, type and nature of any changes to the Form Purchase Agreement requested by each bidder for Lot 1, (b) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtor of such modifications or delay, (c) the total consideration to be received by the Debtor, (d) the likelihood of the bidder's ability to close a transaction and the timing thereof, and (e) the net benefit to the Debtor's estate. After the Auction has concluded, the Debtor shall present to the Court for consideration and approval at the Sale Hearing the Prevailing Bid(s) and the Backup Bid(s). **ALL BIDDING FOR THE ASSETS WILL BE**

**CONCLUDED AT THE AUCTION AND THERE WILL BE NO FURTHER BIDDING AT THE SALE HEARING.** The Lot 1 and/or Lot 2 Prevailing Bidder and Backup Bidder shall provide, by wire transfer, within forty-eight (48) hours of the completion of the Auction, cash in the sum of twenty-five percent (25%) of the respective bids by wire transfer to the Debtor's counsel trust account.

(ix) <u>Sale of De Minimis Assets</u>. The Prevailing Bidder(s) for any de minimis, non-strategic assets in Lots 3-551 with a selling price equal to or less than $5,000 per Lot (the "<u>De Minimis Assets</u>") may elect to tender the full purchase price for such individual lot and take possession of such asset pending presentation of such Prevailing Bid to the Court and entry of the Sale Order. Any of such Prevailing Bid(s) will not be formally accepted by the Debtor until they are approved by the Court. In the event that the Court does not approve each of such Prevailing Bids, the Prevailing Bidder(s) must return the assets of such non-approved sale to the Debtor at the cost of the Prevailing Bidder(s), and the funds paid by the Prevailing Bidder(s) will be returned to the Prevailing Bidder(s).

(x) <u>Auction Report</u>. Immediately following the Auction and, in any event, prior to the commencement of the Sale Hearing, the Debtor shall file a notice on the docket in the bankruptcy case setting forth the results of the Auction (the "<u>Auction Report</u>"). The Auction Report shall, among other things, (a) identify the Prevailing Bidder(s) and the Backup Bidder(s), (b) identify the Assets to be purchased by the Prevailing Bidder(s), (c) set forth the purchase price to be paid by the Prevailing Bidder(s) for such Assets, and (d) identify any of the Debtor's executory contracts and leases to be assumed by the Prevailing Bidder(s) (the "<u>Assigned Contracts</u>").

(xi) <u>Buyer's Premium; Expense Reimbursement</u>. The Sales Agent will not receive any commission or fee for the services provided by the Sales Agent. However, the Sales Agent will charge each Prevailing Bidder a buyer's premium of fifteen percent (15%) of the gross sale proceeds to be paid by such Prevailing Bidder pursuant to its Prevailing Bid(s) (the "<u>Buyer's Premium</u>") and such Prevailing Bidder shall be required to pay the Buyer's Premium at or prior to the closing of the sale. The Debtor's estate is not responsible for any unpaid portion of the Buyer's Premium. Pursuant to the Agency Agreement, the Debtor and the Sales Agent have agreed to split the Buyer's Premium as follows:

| **Total Gross Sale Proceeds** | **Allocation of Buyer's Premium** |
|---|---|
| $0 - $5,000,000 | 100% of 15% Buyer's Premium to Sales Agent |
| $5,000,001 - $8,000,000 | 12.5% to Sales Agent; 2.5% to the Debtor |
| $8,000,001 and up | 11.5% to Sales Agent; 3.5% to the Debtor |

In addition to the Buyer's Premium, the Sales Agent shall be permitted to deduct from the gross proceeds an amount equal to the expenses actually incurred by the

Sales Agent in connection with the Auction and the Proposed Sale Process (such as labor, advertising, travel and lodging), provided that such amount shall not exceed $50,000.

(xii) <u>Sale Hearing</u>. The Sale Hearing will be conducted at **2:00 p.m. on October 6, 2011** at the United States Bankruptcy Court, 355 Main Street, Poughkeepsie, NY 12601, at which time the Debtor intends to present the Prevailing Bid(s) for approval by the Court pursuant to the provisions of sections 105, 363(b), 363(f), 363(m), 363(n) and 365 of the Bankruptcy Code, and the Debtor may provide appropriate notice of the proposed cure costs to be paid in connection with the assumption and assignment of such Assigned Contracts to the nondebtor parties to the Assigned Contracts. At the Sale Hearing, the Debtor shall report the results of the Auction and the Debtor's recommendation with respect to the Prevailing Bid(s) and Backup Bid(s), which is subject to approval of this Court. The Debtor shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing.

(xiii) <u>Closing Deadline; Asset Removal Deadline</u>. The sale(s) contemplated by the Prevailing Bid(s) shall be closed within three (3) business days after the Court enters the Sale Order or by such other deadline agreed to between the Debtor and the Prevailing Bidder(s) (the "<u>Closing Deadline</u>"). At the closing of the sale of any Asset, the purchaser shall (a) pay the Sales Agent with a certified check, bank check or wire transfer for the full outstanding cash balance of the purchase price (including, without limitation, any cure amounts related to any Assigned Contracts), and (b) pay the Sales Agent with a certified check, bank check or wire transfer in favor of the Sales Agent for any Buyer's Premium due to the Sales Agent in accordance with these Bidding Procedures and the Court's order approving the Sales Agent's engagement by the Debtor. Each Prevailing Bidder's or Backup Bidder's sole remedy in the event that a sale fails to close as a result of the Debtor's refusal or inability to close shall be a refund of the monies deposited by such bidder.

Any Prevailing Bidder that is purchasing any of the Debtor's personal property Assets on a non-going-concern basis shall be required to remove such Assets from the New York Facility immediately and, in any event, by no later than thirty (30) days after the Auction or by such other deadline agreed to between the Debtor and such Prevailing Bidder. Each Prevailing Bidder shall be solely responsible for any and all fees, costs and expenses associated with any purchased Assets on and immediately after the Closing Deadline, including, without limitation, any costs and expenses attributable to rent and related expenses for the period of time following the Closing Deadline (regardless of when payment of such rent or related expenses is due pursuant to the applicable lease) and any fees and expenses of the Debtor incurred in connection with such Asset following the Closing Deadline.

(xiv) <u>Customs and Taxes</u>.  Purchasers of the Assets shall be solely responsible for paying any customs duties and taxes due and owing on any of the Assets including, without limitation, any sales taxes, stamp taxes, recording taxes or transfer taxes.

(xv) <u>Liquidated Damages; Backup Bid(s)</u>.  The Debtor will retain as liquidated damages the good faith deposit of any Prevailing Bidder which fails to close the transaction contemplated in its Prevailing Bid on or before the Closing Deadline.  In that event, the Backup Bid or Bids, as identified at the Sale Hearing, shall be deemed to be the Prevailing Bidder(s) and the Sales Agent shall be authorized to effectuate such sale(s) contemplated by the Backup Bid(s).  A Backup Bidder may be required by the Debtor to close on its Backup Bid within ten (10) days of the conclusion of the Auction.  The failure of a Backup Bidder to close on the transaction contemplated in its Backup Bid as if it were the Prevailing Bid shall subject it to forfeiture of its good faith deposit and the retention of such deposit by the Debtor.

(xvi) <u>Return of Good Faith Deposit</u>.  Good faith deposits of all Qualified Bidders, other than the Prevailing Bidder(s) and the Backup Bidder(s), shall be returned to such Qualified Bidders within three (3) business days following the conclusion of the Auction.  The good faith deposit of the Backup Bidder(s) shall be returned to such Backup Bidder within three (3) business days following the closing of the transactions contemplated in the Prevailing Bid(s).

(xvii) <u>Modifications</u>.  The Sales Agent may determine, in its business judgment, but only following the receipt of the Debtor's consent, which bid or bids, if any, constitute the highest or otherwise best offer(s) for the Assets, and may reject at any time any bid that, in the Sales Agent's discretion, but subject to the Debtor's consent, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the terms and conditions of sale, or (c) contrary to the best interests of the Debtor.  At any time before or at the Auction, and subject to the consent of the Debtor, the Sales Agent (y) may impose such other bidding procedures and terms and conditions as it may determine are in the best interests of the Debtor and other parties in interest, and (z) may modify or amend these Bidding Procedures.

2. In the event that the Prevailing Bid(s) contemplate the assumption and assignment of any Assigned Contracts, the Debtor will file a notice in this case (the "<u>Cure Costs Notice</u>") by September 29, 2011, that sets forth the proposed Cure Costs due under such Assigned Contracts in connection with the requirement in section 365(b)(1) of the Bankruptcy Code that the debtor-in-possession, at the time of assumption, cure defaults in any executory contract or unexpired

lease being assumed, or provide adequate assurance that the default will be promptly cured. Immediately upon filing the Cure Costs Notice, the Debtor will serve such notice on the nondebtor parties to the Assigned Contracts by overnight mail.

3. Objections (if any) to approval of any Prevailing Bid or to approval of any proposed sale of the Assets, or any proposed assumption and assignment of the Assigned Contracts (including the amount of any Cure Costs set forth in the Cure Costs Notice) pursuant to any Prevailing Bid, shall be in writing, shall set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed with the Court and served upon each of the following so as to be actually received **on or before 5:00 p.m. on October 3, 2011:** (i) King & Spalding LLP, proposed counsel for the Debtor, 1100 Louisiana Street, Suite 4000, Houston, Texas 77002; Attn: Mark W. Wege, and 1185 Avenue of the Americas New York, New York 10036; Attn: Scott Davidson; (ii) the Office of the United States Trustee, 74 Chapel Street, Suite 200, Albany, NY 12207; and (iii) Lowenstein Sandler PC, counsel for the Series A-1 Noteholder Agent, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn: Sharon L. Levine. Any objection not filed and served in accordance with this paragraph 3 shall be deemed waived and shall be forever barred.

4. The failure of any third party to file and serve an objection as ordered and directed herein shall be deemed the consent of such party to the granting of the Motion and the sale and transfer of the Assets (including the assumption and assignment of Assigned Contracts under any Prevailing Bid).

5. The Bidding Procedures are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Assets, and will confer actual benefits upon the

Debtor's estates.  The Bidding Procedures represent an exercise of the Debtor's sound business judgment and will facilitate an orderly sale process.

SIGNED this 20th day of September, 2011, in Poughkeepsie, NY.

*/s/ Cecelia G. Morris*
UNITED STATES BANKRUPTCY JUDGE